IN THE UNITED DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADEN RUSFELDT,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF READING, CRISTIAN MORAR, CITY OF READING POLICE OFFICER BADGE NUMBER 160, READING SCHOOL DISTRICT<br><br>        Defendants. | Civil Action No.<br>5:23-CV-01523-JMG |

**BRIEF OF DEFENDANT READING SCHOOL DISTRICT IN SUPPORT**

**OF ITS MOTION TO DISMISS**

145658275

**TABLE OF CONTENTS**

I.  FACTUAL BACKGROUND ................................................................................................ 1

II. STANDARD OF REVIEW ................................................................................................ 3

III. ARGUMENT ...................................................................................................................... 5

    A.    All Section 1983 Claims Against the District Should Be Dismissed with Prejudice Because Plaintiff Failed to Allege a Basis for Municipal Liability. ........ 5

    B.    Count Two Should Be Dismissed with Prejudice Because Plaintiff Has Not Alleged Facts Sufficient to Establish a Plausible Claim for Relief for "Civil Conspiracy." ................................................................................................................ 9

    C.    Count Three Should Be Dismissed with Prejudice Because Plaintiff Has Not Alleged Facts Sufficient to Establish a Plausible Claim for "Failure to Train." .. 11

    D.    Even if the District's Security Officers Called the Police or Requested Plaintiff to Relocate, Such Actions Do Not Result in Liability. ........................... 12

    E.    Additionally and Alternatively, All Punitive Damages Claims Against the District Must Be Dismissed. ................................................................................... 14

IV. CONCLUSION ................................................................................................................ 14

Defendant Reading School District (the "District") submits this Brief in support of its Motion to Dismiss. The District seeks the dismissal, with prejudice, of Count One ("Violation of Constitutional Rights (42 U.S.C. § 1983)"), Count Two ("Civil Conspiracy (42 U.S.C. § 1983)") and Count Three ("Failure to Train (42 U.S.C. § 1983)") of the Complaint as asserted against the District. Plaintiff attempts to hold a school district liable for civil rights violations because its security guards merely called the police when there was a volatile exchange between demonstrators and students off of school property. As explained below, Plaintiff has failed to state a claim to establish liability under this fact pattern. Additionally and alternatively, the District seeks the dismissal of all claims asserted against it for punitive damages.

I. **FACTUAL BACKGROUND**

Plaintiff, who identifies himself as the "Pastor of Key of David Christian Center," filed a Complaint following an incident that occurred on January 10, 2023 between Plaintiff and students of the District (the "Incident"). The Complaint readily concedes that the Incident did not occur on District property, but rather on a "public sidewalk in the City of Reading." See Complaint at ¶ 11. The Complaint names four defendants: (1) the District; (2) the City of Reading (the "City"); (3) a "City of Reading Police Officer Badge Number 160," and; (4) Cristian Morar, a police officer for the City.

At the time of the Incident, Plaintiff, along with fellow demonstrators, held up signs and used a megaphone to espouse their views directed toward the students of the District.[1] Id. at ¶ 13. The Complaint alleges that the District's students, who had been dismissed from school at the end

---

[1] The Complaint asserts that Plaintiff and his fellow demonstrators were "peacefully assembled." The District disputes that the words, signs, and actions exhibited by Plaintiff were "peaceful" or anything short of an attempt to bait a response and confrontation with students, most of whom were juveniles; however, for purposes of this Motion, the District will take Plaintiff's assertion on this point as true.

of the day, began to engage with Plaintiff, yelling back at him and, in one instance, throwing water on Plaintiff.  Id. at ¶ 14.  The Complaint asserts, on one hand, that the District's security guards "did nothing to protect Plaintiff," (id. at ¶ 17) and, on the other hand, alleges that the District simultaneously violated Plaintiff's constitutional rights by contacting the City to request police assistance in responding to what the Complaint readily acknowledges was an increasingly volatile situation (id. at ¶¶ 14; 16).

The Complaint attempts to assert the following four causes of action:

- Count One: "Violations of Constitutional Rights (42 U.S.C. § 1983)" against all Defendants;

- Count Two: "Civil Conspiracy (42 U.S.C. § 1983)" against all Defendants;

- Count Three: "Failure to Train (42 U.S.C. § 1983)" against the District and the City; and

- Count Four: "False Imprisonment" against the City, Officer Morar, and "Police Officer Badge No. 160."

See generally Complaint.  In all three counts against the District, the Plaintiff seeks damages, "including punitive damages."  See Complaint, "Wherefore" Clause of Count One, Count Two, and Count Three.

Plaintiff alleges "on information and belief" that it is "the policy" of the City and the District to "instigate, request, or engage in pretextual, warrantless arrests as a means of discriminating or retaliating against" certain religious viewpoints and the "Fourth Amendment rights" of adherents to such viewpoints.  See Complaint at ¶ 25.  Plaintiff further asserts that the District "failed to train" its security guards or employees.  Id. at ¶ 38.  However, in his Complaint, Plaintiff does not set out any facts in support of any allegations that the District knew any policies

2

145658275

or training were insufficient, such as a pattern of prior similar constitutional violations putting the District on notice of the allegedly inadequate policies. Plaintiff also fails to identify the existing District policies, explain why they were deficient, or identify a policy maker or decision maker who was allegedly aware of such deficiencies. In fact, Plaintiff only alleges that the District security guards called police when the Incident became volatile. Id. at ¶ 16. Further, although Plaintiff also alleges, without factual foundation, that the police were called to arrest Plaintiff and his demonstrators, he concedes no one was arrested. Id. at ¶ 23.

## II.  STANDARD OF REVIEW

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In order to survive a 12(b)(6) motion to dismiss, a complaint must include factual allegations that demonstrate the plaintiff's plausible entitlement to relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that the defendant has acted unlawfully. **Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief**.'"

Id. (citing Twombly, 550 U.S. at 556-57) (emphasis added).

In <u>Fowler v. UPMC Shadyside</u>, 578 F. 3d 203 (3d Cir. 2009), the Third Circuit described how the Rule 12(b)(6) standard had changed in light of <u>Twombly</u> and <u>Iqbal</u>. <u>Fowler</u>, 578 F. 3d at 210. First, the court must separate factual allegations from legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." <u>Twombly</u>, 550 U.S. at 555. Second, the court must determine whether the factual allegations contained in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Fowler</u>, 578 F. 3d at 211.

Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 678. If the complaint does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and does not raise more than a "sheer possibility that a defendant has acted unlawfully, it warrants dismissal." <u>Id</u>. at 677. "A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible." <u>Fowler</u>, 578 F. 3d at 211. Accordingly, where the factual allegations fail to state a "plausible ground[s] for relief" dismissal is appropriate. <u>Id</u>. at 212.

A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." <u>Iqbal</u>, 556 U.S. at 678. Furthermore, vague and conclusory allegations contained in a complaint do not provide fair notice of the plaintiff's claims, and will not survive a motion to dismiss. <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F. 3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.") Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Assoc. Gen. Contractors of Cal. V. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

4

## III.     ARGUMENT

The District seeks the dismissal, with prejudice, of all claims asserted against it. Incredibly, the Complaint asserts that the District both had a duty to protect Plaintiff and, at the same time, improperly acted in requesting police assistance with a volatile situation that appeared likely to lead to violence against Plaintiff. Even setting aside this inconsistent and confusing framing of the case, the Complaint is woefully inadequate in pleading any viable cause of action against the District. Additionally, punitive damages are not recoverable against the District under Section 1983.

### A.     All Section 1983 Claims Against the District Should Be Dismissed with Prejudice Because Plaintiff Failed to Allege a Basis for Municipal Liability.

Counts One, Two, and Three of the Complaint all purport to assert claims against the District pursuant to 42 U.S.C. § 1983. These claims against the District should be dismissed because Plaintiff has failed to sufficiently plead the existence of a policy or custom that directly caused Plaintiff's alleged constitutional violations. Because a municipality may only be liable under Section 1983 for maintenance of such a policy or custom, and the averments fall far short of the necessary pleading requirements to state a claim for municipal liability against the District, such claims should be dismissed with prejudice.

In order to recover under Section 1983, a plaintiff must establish that the municipality: (1) while acting under the color of state law; (2) deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. Gruenke v. Seip, 225 F. 3d 290, 298 (3d Cir. 2000). As the Court is well aware, Monell v. Department of Social Services, 436 U.S. 658 (1978) established that a local government may not be sued under Section 1983 using a *respondeat superior* theory; instead, liability must be founded upon evidence that the government unit itself supported a violation of constitutional rights. Id. at 691-95; see also Watson v. Abington

Township, 478 F. 3d 144, 155 (3d Cir. 2007); Bielevicz v. Dubinon, 915 F. 2d 845, 849-50 (3d Cir. 1990).  Municipal liability only attaches when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694; Bielevicz, 915 F. 2d at 850. The Supreme Court has reaffirmed that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Board of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997).

A plaintiff can establish municipal liability under Section 1983 by identifying either a municipal policy or custom that caused the plaintiff's injury.  Brown, 520 U.S. at 403; Watson, 478 F. 3d at 155.  A plaintiff shows a policy existed "when a 'decision maker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict," while a custom is a practice that is "so permanent and well-settled as to virtually constitute law."  Id. at 155-56; Beck v. City of Pittsburgh, 89 F. 3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Phila., 895 F. 2d 1469, 1480 (3d Cir. 1990)).

Indeed, with regard to a municipal "policy," the failure to allege conduct by a municipal decision maker is "fatal" to a Section 1983 claim.  See McTernan v. City of York, 564 F. 3d 636, 658-59 (3d Cir. 2009).  McTernan involved the alleged infringement of the plaintiff's First Amendment rights when a city police officer arrested him while he was espousing anti-abortion viewpoints outside a Planned Parenthood clinic.  Id. at 642.  The Third Circuit concluded that Section 1983 claims filed against a city were properly dismissed due to the pleading's lack of identification of any "custom or policy" of the city beyond a cursory statement that the city had a "policy of ignoring First Amendment Rights." Id. at 658.  Further, although the complaint alleged

6

that the city's officers "periodically" instructed protestors to leave, there was no pleading of "knowledge of such directives by a municipal decisionmaker." Id.  The Court explained:

> There is no allegation that either the Mayor or the Police Chief were aware of, let alone directed, the restrictions or participated in formulating traffic abatement strategies at the Clinic.  Nor do the allegations support, indirectly, such an inference.  **The complaint alleges nothing more than directives issued *ad hoc* by individual officers, without reference to any formal administrative or policy channels.  Hence, the allegations are deficient.**

Id. at 659.  (Emphasis added.)

In addition to providing that an unlawful policy or custom existed, a plaintiff must also show a causal link between the alleged custom or policy and the alleged harm.  Watson, 478 F. 3d at 156; Bielevicz, 915 F. 2d 850.  A plaintiff must provide evidence that the municipal entity itself supported a violation of the plaintiff's constitutional rights.  Id.; Monell, 436 U.S. at 695.  In short, "a municipality can be liable under Section 1983 only where its policies are the 'moving force behind the violation.'"  City of Canton v. Harris, 489 U.S. 378, 386 (1989) (quoting Monell, 436 U.S. at 694).

Cases are clear, however, that "it is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs v. Brown, 520 U.S. at 404.  "A showing of simple or even heightened negligence will not suffice."  Berg v. Cty of Allegheny, 219 F. 3d 261, 176 (3d Cir. 2000).

The Eastern District of Pennsylvania has already rejected a Section 1983 Monell claim involving school district employees in Tucker v. School Dist. of Phila., 2019 WL 3802066 (E.D. Pa. August 13, 2019).  In Tucker, plaintiffs filed suit against a school district and teacher following the alleged physical assault by the teacher of a special education student.  Id. at *1.  The alleged

7

incident included the teacher grabbing the student by the neck, choking the student, and pushing the student against a wall in front of other students. Id. The complaint asserted that the school district failed to properly train the teacher and failed to discipline or re-train him after the incident. Id. The complaint further asserted that the district had a "policy and/or custom" "to improperly train and investigate acts of misconduct by its employees" and to "inadequately supervise and train its employees . . . thereby failing to adequately discourage further constitutional violations." Id. at *3. Furthermore, the school district purportedly failed to "require appropriate in-service training or re-training of teachers who were known to have engaged in propensities for violence . . ." Id. The Court held that these allegations were insufficient to establish municipal liability against the school district.

Specifically, the court held that the allegations failed to allege that the teacher "was executing a [district] policy, proclamation or edict" when he assaulted the student, nor was there an allegation that the teacher acted "pursuant to a custom of constitutional violations so well-settled as to constitute the 'standard operating procedure' of the [district]." Id. at *4. Although the complaint contained general allegations, it pled no supporting factual assertions that the district knew of prior similar conduct; therefore, the complaint's vague assertions were "insufficient to survive a motion to dismiss." Id. Similarly, with regard to allegations of purportedly inadequate training and/or supervision, the court rejected plaintiffs' request to infer that the improper use of force, in and of itself, evidenced the district's deliberate indifference to the need to train, supervise, and/or discipline its employees. Id. Additionally, bald assertions of purported knowledge of prior incidents "are not entitled to the assumption of truth." Id. As a result, the Court granted the district's motion to dismiss.

As in Tucker, the allegations asserted against the District in Plaintiff's Complaint fail to establish Monell liability against the District. The Complaint, like Tucker, contains **only one naked allegation** that the District has a "policy" to "instigate, request, or engage in pretextual, warrantless arrests as a means of discriminating or retaliating" against certain religious viewpoints. See Complaint at ¶ 25. However, the Complete concedes that Plaintiff was not arrested. Id. at ¶ 23. The Complaint improperly asks the Court to infer that the occurrence of the Incident, alone, constitutes sufficient evidence of the District's liability, just as in Tucker. There is no allegation that any decision maker for the District directed or participated in the security guards' actions[2] regarding the Incident. For these reasons, as in McTernan and Tucker, the Court should dismiss, with prejudice, all Section 1983 claims against the District, with prejudice.

    **B.**    **Count Two Should Be Dismissed with Prejudice Because Plaintiff Has Not Alleged Facts Sufficient to Establish a Plausible Claim for Relief for "Civil Conspiracy."**

In addition to the argument contained supra, Count Two of Plaintiff's Complaint purports to assert a Section 1983 claim for "Civil Conspiracy" against all Defendants. See Complaint at ¶¶ 33-36. The factual allegations for this Count, however, fall far short of the pleading requirements necessary to survive a motion to dismiss.

As outlined, if the complaint does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and does not raise more than a "sheer possibility that a defendant has acted unlawfully, it warrants dismissal." Iqbal, 556 U.S. at 677. "A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible." Fowler, 578 F. 3d at 211. Vague and conclusory allegations

---

[2] As will be discussed infra, the District and its security guards had no duty to respond to incidents occurring off District property outside of school hours.

contained in a complaint do not provide fair notice of the plaintiff's claims, and will not survive a motion to dismiss.  Morse, 132 F. 3d at 906.  ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.")

Federal courts in Pennsylvania have stressed that "[s]tringent pleadings requirements also apply to allegations of conspiracy." Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). When pleading a claim for conspiracy, the "plaintiff's allegations **must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played . . . Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy**." Id.  (Emphasis added.)  See also McClure v. Kann, 926 F.2d 1396, 1405 at n.16 (3d Cir. 1991) (holding that conspiracy allegations based not in fact, but rather on suspicions and speculation, are properly dismissed).  A plaintiff "must allege plausible facts concerning (1) the period of the conspiracy; (2) the object of the conspiracy; and (3) certain actions of the alleged conspirators taken to achieve that purpose." See Stief v. Robeson Twp., 2021 WL 2137588 at *3 (E.D. Pa. 2021). Failing to plead such facts, and including only bare conclusory statements, "does not pass muster" and warrants the granting of a motion to discuss. Id.

Here, Count Two of the Complaint is completely devoid of facts sufficient to establish a plausible claim for relief under a theory of "civil conspiracy."  The Complaint does nothing more than pepper **two paragraphs** with conclusory phrases and allegations, baldly contending that the Defendants "reached an understanding" in "furtherance of their conspiratorial objectives."  See Complaint at ¶¶ 34-35.  Plaintiff fails to show how the District, in merely calling for the City's police assistance to respond to a volatile situation occurring on public, non-District property, constitutes a viable claim for conspiracy.  See Morse.  Additionally, the Complaint claims that the

conspiracy was to have demonstrators like Plaintiff arrested but concedes Plaintiff was not, in fact, arrested. See Complaint at ¶ 23. As a result, Count Two of the Complaint should be stricken with prejudice.

C. **Count Three Should Be Dismissed with Prejudice Because Plaintiff Has Not Alleged Facts Sufficient to Establish a Plausible Claim for "Failure to Train."**

Count Three of the Complaint alleges, as against the District, that it "failed to train" its security guards or employees "under circumstances evidencing a reckless indifference to the rights of others, specifically, the right to demonstrate **on public property**." See Complaint at ¶ 38 (emphasis added). Even if the District *had* failed to train its security guards, a point not conceded, there is no obligation to train its security guards to respond to events that do not occur on District property and have no relation to school activities.

Indeed, no Pennsylvania statute or case law imposes a legal duty obligating a school district employee to intervene in incidents occurring off school district property involving school students. However, other states that have addressed this issue have found no such liability. See, e.g., Beshears v. Unified School District No. 305, 261 Kan. 555 (Kan. 1997) (holding that a school district is not liable for incidents occurring off-campus, after school hours); Concepcion v. Archdiocese of Miami, 693 So.2d 1103 (Fla. Dist. Ct. App. 1997) (holding that a school has no duty to supervise off-campus, non-school related activities occurring outside of school hours).

Puzzlingly, the Complaint points to the decision of Grant v. Winik[3] to support Plaintiff's "Failure to Train" claim. Initially, Grant involved a warrantless entry into an individual's home, resulting in a confrontation leading to his unfortunate death; the case has absolutely nothing to do

---

[3] The Complaint's citation is inaccurate. The correct citation to Grant v. Winik is 948 F. Supp. 2d **480** (E.D. Pa. 2013).

11

with First Amendment rights or assertedly wrongful arrest.  See generally, Grant v. Winik, 948 F. Supp. 2d 480 (E.D. Pa. 2013).  It seems entirely inapplicable to Plaintiff's fact pattern.

Grant *is* on point, however, with regard to its discussion of the legal "failure to train" theory, and it is not favorable to Plaintiff's position.  The court explains that "a municipality's culpability for a deprivation of rights is **at its most tenuous where a claim turns on failure to train**."  See 948 F. Supp. 2d at 513 (emphasis added).  Pleading a failure to train claim requires a showing that a municipality made a 'deliberate' or 'conscious' choice.  Id.  The court further explained that "[m]ere allegations that the municipality could have or should have incorporated different training programs are insufficient," as are allegations that a particular officer "may be unsatisfactorily trained."  Id.  (Internal citations omitted.)  Instead, a complaint must assert facts showing a "'deliberate choice to follow a course of action [that] is made from among various alternatives' without regard to the known or obvious consequences."  Id.

Here, Plaintiff's sole allegation is the cursory statement that the District "failed to train" its security guards.  There are no allegations of the District making any "deliberate choice" from various alternative options, without regard to an obvious consequence.  Even if the Complaint was amended to include such cursory statements, it would not be sufficient.  See Morse v. Lower Merion Sch. Dist., 132 F. 3d 902, 906 (3d Cir. 1997).

### D. Even if the District's Security Officers Called the Police or Requested Plaintiff to Relocate, Such Actions Do Not Result in Liability.

Mere allegations that the District's security officers called the police or requested Plaintiff to relocate are insufficient to state a claim for any constitutional violation.

Calling for police assistance has been deemed "entirely reasonable" when there is a "perception of exigent circumstances."  See Grant, 948 F. Supp. 2d at 502-03.  Plaintiff's own Complaint describes the exigent circumstances involved in the Incident -- escalating tensions

between certain students and Plaintiff; indeed, the Complaint bemoans that the District "did nothing to protect" Plaintiff in the same pleading that sues the District for its security guards' action of seeking police assistance. See Complaint at ¶¶ 14; 16.

Particularly on point, and as explained in Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 967-968 (11th Cir. 2002), a school district should not be held liable for an allegedly unlawful arrest resulting from school officials contacting police concerning perceived criminal behavior. Id. Thus, any policy requiring the police be contacted could not be deemed the "moving force" behind plaintiff's arrest. Id. It is not sufficient for a policy to be tangentially related to a constitutional deprivation, nor did the school have a custom whereby school reporting of crimes automatically led to arrest. Id.

In a fairly recent Eastern District Court decision, the court explained that the "First Amendment does not promise citizens an unfettered speech right even on public byways." Fleck v. Trustees of Univ. of Pa., 995 F. Supp. 2d 390, 403 (2014). In Fleck, the plaintiff intentionally traveled to a mosque at a time known to coincide with evening prayer hours and preached the gospel in front of the mosque. Id. at 395. The plaintiff's actions escalated to shouting that Islam is a hate religion. Id. at 396. In response, a university security guard requested plaintiff lower his voice, which plaintiff declined to do. Id. Two university police officers responded and observed the increasingly volatile situation, which included the gathered crowd threatening the plaintiff. Id. The plaintiff was asked to move down the street, declined to do so, and ultimately was arrested for disorderly conduct. Id.

Following the filing of a dispositive motion, the court dismissed the claims against the university officers, observing that the officers were not alleged to make any reference to the content of plaintiff's speech, and that plaintiff had been informed he could continue preaching "at a modest

13

distance" from the front of the mosque.  Id. at 404.  The court noted that "the justification of **maintaining public order and crowd control, protecting all parties, and diffusing a potentially explosive situation** satisfied the requirement that time, place, or manner regulations be content neutral."  Id.  (Emphasis added.)

Applying these cases, even if Plaintiff is correct that the District's security officers asked him to move and/or called the City for police assistance, neither action would result in any liability to the District.  As a result, and for this additional reason, Plaintiff's claims should be dismissed with prejudice.

### E. Additionally and Alternatively, All Punitive Damages Claims Against the District Must Be Dismissed.

To the extent Plaintiff's Complaint seeks punitive damages against the District, those claims should be dismissed.  Punitive damages are not recoverable against a municipality under Section 1983.  See City of Newport v. Fact Concerts, Inc., 101 S. Ct. 2748, 2762 (U.S. 1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983.").  Thus, even if Plaintiff had plead a viable claim against the District, which Plaintiff did not, his claims for punitive damages against the District should be dismissed.

## IV.  CONCLUSION

For all of the foregoing reasons, the District respectfully requests the Court grant its Motion to Dismiss, and dismiss, with prejudice, Count One ("Violation of Constitutional Rights (42 U.S.C. § 1983)"), Count Two ("Civil Conspiracy (42 U.S.C. § 1983)") and Count Three ("Failure to Train

(42 U.S.C. § 1983)") of the Complaint asserted against the District.  Additionally and alternatively, all claims for punitive damages against the District must be dismissed with prejudice.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

Dated: May 15, 2023      By: */s/ John J. Miravich*
John J. Miravich, Esquire
Alicia S. Luke, Esquire
Attorney Identification Nos. 56124, 311306
Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA  19341-0673
Email: jmiravich@foxrothschild.com;
aluke@foxrothschild.com
*Attorneys for Reading School District*

145658275